## SUPREME COURT.

ISAAC KIPP, JR., agt. ERASTUS P. MUNROE and others.

Where the defendants were sued on an executory contract for the purchase of one hundred shares of the Nicaragua Transit Company, and upon the trial they offered to prove, by a certified copy of a decree of the Rivas government, that at the time of making the contract, the charter of the company and all its privileges had, without the knowlege of the defendants, been *revoked and annulled,* and the company been dissolved and abolished,

*Held,* that it was error to exclude this evidence. The stock certificates of a company, and the promissory notes of an individual, are equally choses in action, and, so far as *insolvency* is concerned, stand on the same footing; and, therefore, an executory contract for the purchase of such certificates, comes within the case of *Benedict* agt. *Field* (16 *N. Y. R.* 595).

*New-York General Term, September,* 1859.
*Present,* ROOSEVELT, INGRAHAM *and* PRATT, *Justices.*
MOTION for a new trial, on judgment on report of referee.

By the court—ROOSEVELT, Justice. The defendants, although partners, carried on their business in the sole name of Fleming, and the present action is brought on the following contract made by them in that manner:

"100 shares 23 B. 30.     New-York, March 4th, 1856.
"I have purchased of Isaac Kipp, Jr., one hundred (100) shares of the stock of the Nicaragua Transit Company, at twenty-three (23) per cent. payable and deliverable, buyer's option, in thirty days, with interest at the rate of six per cent. per annum.
                                                    A. FLEMING."

On the trial before the referee, the defendants offered to prove that the Rivas government made a certain decree, a certified copy of which was produced duly authenticated, and that this decree was promulgated in the public square of Granada, the place where decrees are promulgated, the residence of the government, about the 18th of February, 1856. That the govern

ment which made the decree was the government at the time, and had full power and right to make such decree, and that such decree had been carried into effect.

The referee, however, excluded the evidence, and, as we think, erroneously.

Had the decree been admitted, it would have shown, or at least would have tended to show, that, at the time of mak-ing the contract, the charter of the company and all its privileges had, without the knowledge of the defendants, been "revoked and annulled," and the company itself been "dis-solved and abolished." It would, in other words, have shown that the thing contracted for had substantially no existence. What the defendants bought, or agreed to buy, was one hun-dred shares of stock in a living company, and not a proportion-ate undivided interest in the remaining assets of a dead com-pany in the hands of a receiver.

In the case of *Benedict* agt. *Field* (16 *New-York Reports*, 595), the court of appeals held that, upon an executory contract for the delivery of goods, to be paid for, on arrival, in the notes of a third party, if that party becomes insolvent before delivery, the seller is not bound to deliver the goods and accept the notes, although the notes at the time may not be entirely worthless. So that stating the transaction in another form, as an execu-tory purchase, of notes to be delivered, paid for in goods at a future time, the authority is precisely in point. The notes of an individual and the stock certificates of a company are equally choses in action; and, so far as insolvency is concerned, stand on the same footing. The fact that the insolvency in the present case occurred before, instead of after, the date of the contract, can make no difference, as the defendants had no knowledge of the revocation until a subsequent period.

The report of the referee, and the judgment entered thereon, should be set aside, and a new trial had, costs to abide the event.